and we will begin with oral argument, Mr. Hillis, from you. May it please the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Cameron Johnson. This case is not a puzzle. This case has a very straightforward issue for the court, two in our view, but one we think we're going to have to hold off on until the Supreme Court decides the Erlinger case that is recently argued and now pending, but whether or not it's a jury's province to decide the separate occasions issue. Mr. Hillis, I'm going to ask you a few questions on that particular issue in looking for the benefit of your experience and knowledge of the record. The defense lawyer from Indianapolis argues that it should be a judge call, not a jury call. She makes that motion to dismiss the ACA enhancement in a docket entry before the district court. The government at some point takes the position, no, it should be a jury call. The judge then makes the determination that, no, it's a judge call. At that point, I don't think, I'm not sure if cert had been granted in Erlinger or not, but the issue then gets raised again in docket entry 135, the sentencing transcript, and there's a discussion between the AUSA, the defense lawyer, and the district court as to whether it had been waived or not.  She disagrees with the government, agrees with the defense lawyer that what had occurred was a decision by the court that it should be the judge. So we have a record below with regard to this question, but the defense position was to the opposite of what it is now in appeal. Now we do have case law that does speak to what preservation means in the context of a issue on which the court has set precedent. Unravel that for us as to whether there's a preservation issue or not on the jury versus judge question on the ACA enhancement separate occasions question. Okay. So my understanding of the discussion was that the parties, despite the original contrary position by the defense, ultimately agreed in front of the judge and that would by itself be sufficient to preserve the issue. But I would also gloss that by saying I don't understand the government's position here today to say that this is a waiver such that this isn't a preserved issue that this court can and should decide. So those are my two quick off-the-cuff answers on that, Judge. And if the government disputes that, I will go ahead and entertain a further rebuttal and say more if I need to, but I don't have additional information to offer on this because I think those two things allow us to proceed in some fashion on this, of course, pending what Erlinger says. Then let me move you to your second argument, and it goes specifically to a Shepard document and the five-minute time frame. As I understand it, the five-minute time frame comes from the PSR. The PSR itself might have been relying on a probable cause affidavit. We've got Richardson, we've got other cases that speak to which documents we can look to for some of these facts and which we can't. Do we have a Shepard document problem on the five-minute factor? I don't think so because I think that that would have been an issue if the government were to contest that, that the time has passed, that the information is now before the court. I don't understand them to be contesting the validity of the documents now again, Judge. So I think the information is before the court regardless of what happened on that particular issue below. And furthermore, I think that, you know, it's in the event of a remand, if Shepard documents need to be put in that fashion, that can be done. But I think that we are past that moment where we're concerned about what documents since they've already been received by the court and they're not in dispute on the appeal. Thank you for indulging me. You may continue. Okay. So with that, the more straightforward issue before the court today is in the event that this case does get remanded, if there's a GVR, for instance, post Erlanger, what do we do? And this is the critical thing in our view. This is an important case because we need to know what is the correct test to apply. And the district court more or less asked for guidance from this court in its sentencing comments during the hearing, said that it needs to know. Our view on it is that this should never be a factor, this ability to desist, right? Stop and change one's mind is something that will inevitably favor the government. Every other factor that is in the analysis for Wooden on page 1071, we're talking about things that are measurable in a way that is far different from whether or not somebody had the ability to desist. The ability to desist is omnipresent. It's going to be there in every case. It's going to benefit the government in every case. We don't have that as a valid consideration for a couple of reasons. First of all, it's not in Wooden. Wooden looked at whether something was close in time, physical proximity between the offenses, significant intervening events or uninterrupted activity, and commonality of the crimes such as the character and relationship of the offenses. If we were to interject something that is not in Wooden and always favors the government, I don't see how that would have escaped, first of all, Wooden's attention that this ability to desist could have been overlooked. Many of the factors in Wooden also really speak to or are there because they speak to the question of recidivism and they speak to, therefore, speak to the question of whether one had an opportunity to change his or her ways. I mean, isn't the question of whether one had the, as to whether one had the opportunity to change his or her ways really inherent in all of the Wooden factors? It is, but that's why we don't look to that. We look to the factors that are explicit because otherwise, if we're to consider that, I think we're moving back into legal history, into the Huddleston line of cases from this court and others that talk about breaking through walls, et cetera. If that, again, was a valid consideration, I really don't imagine that the Supreme Court would have failed to alight upon that for the judge's consideration in future cases. So I don't think that we can move back to that as a consideration. It's surely present. But you would agree that, I mean, the legislative history, when I think we could use that dirty word in this case because, you know, the justice used it in Wooden, it's clear that what Congress wants to do here is identify the recidivist. I would say that whatever we're going to do with legislative history, we look to explicit text of Wooden first and foremost. And so when Wooden has the opportunity to include this ability to desist as a factor and chooses not to, at the very least it's implicit in the opinion, that we would not want to include that now. Again, it would be very peculiar, Judge Ripple, if we were to include a factor in the analysis that always benefits the government. If you were to say that somebody was breathing when they committed the offense and hold that against them, benefit the government, it's a choice. I wanted to get you to go one step further, though, and say what is the underlying policy concern of this statute? What was Congress trying to accomplish? Sure. Genuinely separate offenses should be tallied as such and used for the recidivism purposes. Why? Because it demonstrates a worse history that would demonstrate the need for greater punishment. What is the significance of the word spree after Wooden? It is subject to analysis. The validity of it would be, again, relevant to over what period is the spree? How similar are the offenses and what distance between them, et cetera? The nature of the victims and those sort of things. Let's put that in context for the case that we have. If we have a case here, unlike Richardson, that involves 36 hours, 12 miles, things like that, we have here 5 minutes, 0.6 miles, and we are not allowed, like the PSR suggested, to consider the impact of the harm on the individuals, the ability to desist from committing the offense. Because we are looking at things that are more concrete than that and more measurable. So we are looking to the things that Wooden says, and if it's to demonstrate, then, that it is multiple offenses as part of the spree, because they're separated in time, distance. It's a robbery in this case, two robberies, but they occur hard on the heels of one another. So there's a commonality of the scheme, again, Judge Ripple. So if we were to look at those things and apply them as we're supposed to per Wooden, I think that we have a case that says, under Wooden, it shouldn't have turned out the way it did. And I worry that we're at risk of collapsing Wooden into a one-off case, because it shouldn't be expected that the Supreme Court's going to hear a case to be designed for one outcome, for one person. This is a test that should be applied for everyone, and if we're going to use this case, I think in a meaningful way, we cannot include a factor, like the government's asking to be included, and as the district court applied it here. And again, Wooden suggests that it shouldn't, Huddleston precedes Wooden, and I don't see anything that allows us, even though Richardson correctly said as a descriptive matter that somebody had the ability to stop in that case, Richardson ultimately relied on, what, time, distance, similarity of offenses, things like that, just like Wooden did. There's no site after the descriptor, the descriptive remark about how the offenses could have been desisted, right, that the person could have stopped, rather. There's no site to say that that is a factor. It is rather an observation, and it's appropriate to mention it, but it shouldn't be relied upon going forward post-Wooden. With that, I reserve my 11 seconds. We'll give you more time for rebuttal. Thank you, Mr. Hillis. Ms. Cosby, we'll now move to you. If I could ask you to begin with this preservation issue I started with Mr. Hillis as well. Certainly, Your Honor, and with regards to that issue, it was clearly before the district court in this case, in the motion to dismiss the ACCA enhancement, that Mr. Johnson did raise the issue of whether or not the Sixth Amendment prohibited the district court from making that determination. So, insofar as the case here, we believe that that has been preserved and would be before the court, of course, pending the Supreme Court's ruling on the Ellinger issue. And it strikes me, I don't know the record as well as you do, but all along the government was taking the position that this is a jury issue, or did it, at least the government took that position beginning at the time it responded to the motion to dismiss from the defense counsel at the trial level. That is correct, Your Honor. That is correct, yes. Thank you. You may continue. Certainly. Thank you. And so, in representing the government, Your Honor, we are asking the court to affirm the district court's sentencing order because the district court considered the time, the location, as well as the character and relationship of the offenses as required by Wooden, in addition to this court's particular guidance in Richardson in rendering the decision. And that decision led to a determination that the 2009 robberies were separatications. Now, we remind the court there's no dispute with regards to the 2016 robbery, and there are no disputes with regards to the specific facts giving rise to these robberies. So you agree with Mr. Hillis's position that the Shepherd document problem on the five minutes, even though it was in a PSR, because we're past that? That is correct. We are past that. And in particular, with regards to the government's sentencing memorandum, the government attached a map that showed the location, it showed the layout, and it gave an approximation of timing. And so, once that was included, that was not disputed. There is no dispute here with regards to the approximate five minute time and the .6 miles in distance between the locations. What we do believe is important, and again, to go back to Richardson and the idea of considering whether or not an individual has an opportunity to stop and desist their criminal behavior between actions, this is not something that simply arose in Richardson. This is a long-standing consideration of this court, decades old, that predated Woodin, and that has survived Woodin in the Richardson opinion. And what's important is that it wasn't just something that this- It's a pretty heavy lift for a court of appeals, isn't it? Yes. I mean, to insert a consideration which clearly the Supreme Court left out. Well, Your Honor, we don't believe necessarily that the court is inserting something that the Supreme Court intentionally left out, because what the court said in Woodin was that timing, location, character, and relationship are some of the relevant factors that could be considered. The court certainly could have expressly limited consideration to those- And I'm going to ask you the question I asked your brother, and that is simply what is the underlying policy concern of this statute? What was Congress trying to do with this statute? The underlying policy concern is to reduce the recidivism of those violent offenders. So the factors that we weigh have to go to the issue of recidivism, whether they indicate recidivism or not, is that right? That should be a consideration, yes, Your Honor. A consideration? I'm sorry. You would go to that. I agree. The answer to your question is yes. What I'm really concerned about here is whether or not we have a judicial overruling of a congressional judgment here. I mean, this statute was specifically amended by the Congress to make sure that we focused on recidivism. It seems to me that the executive branch now is trying to inch us away from that and have us look at a very mechanistic view of whether or not these are discrete actions, and if we can slice the carrot as thinly as possible, we'll- I don't know, are we going to come up with a four-minute rule here or something like that? Is that what we're going to do? Not worry about whether it indicates recidivism. We're simply going to see if we can slice that carrot as thinly as we can. Well, Your Honor, to that extent, the government would share your concern in that we don't believe that either wooden or it would be appropriate to necessarily come up with that bright-line four-minute or five-minute rule, because as the court indicated in wooden, it should be a multi-factor analysis in order to determine whether or not these are separate occasions. And going back to your point in terms of identifying recidivism, the three predicate offenses were violent and they involved weapons, and still in this particular case, Mr. Johnson was found with another weapon. He used that in furtherance of his crimes, and so we would submit that it would apply to individuals like him, who many years, at this point seven, almost eight years removed, and 15 years removed, he is still carrying a weapon that he had once used in the furtherance of his crime. So it would apply specifically to Mr. Johnson. And going to the idea of not having a bright-line rule, that's why this multi-factor analysis is important. When you look at Richardson and when you look at the opportunity to cease and desist, whether this court considers the opportunity to cease and desist as a consideration in terms of a district court's determination of time or of location, or whether this court chose to include that as an additional factor, the court would be within its purview to do so, and that would be consistent with other circuits that have recognized that Wooden does not limit to time, location, and character, and relationship. Ms. Cosby, would you agree that in Wooden itself, there would have been an opportunity to desist before the person went into each additional storage unit? In a practical matter, absolutely. I, for example, would have had the opportunity to stop walking over here between there. So the same thing would have occurred in there. And that's why, again, it could be a consideration that informs. But given that this was one storage building in multiple units, and that the person went from unit to unit to unit, a court could consider that that indication, that factor, is not enough to weigh in favor of determining that they would be separate occasions. So again, much like timing, much like location, it would be a factor, but it doesn't automatically result in weighing in favor of the government in that instance, specifically in the instance of Wooden. We don't believe that it would. And considering the particular things that Mr. Johnson has raised, when you look at the location, we've cited in our briefing other cases, other circuits that have found that half mile as well as the distance to be relevant, and that's what the district court did, looked at the fact that this was not, for example, someone who simply went a half block. Someone had to, he actually had to get in the vehicle, and he had to maneuver several streets, stop signs, to get to a different location, which clearly distinguishes these two bus stops. Do we know it was several streets and stop signs? Is that in the record? That is in the record, Your Honor. If you look at the sentencing memorandum on behalf of the government and that map that was submitted to the district judge, that was in there, and it indicates as well the thoroughfares. And we can consider it? Yes, Your Honor, because it was before the court and that was not objected to, so that is something that we can consider. So if there had been no stop signs? Again, if there had been no stop signs, that would still be a consideration. What the judge looked at was in determining that these were not locations that were right next to each other, that these were clearly different bus stops in which Mr. Johnson had to travel from one to another. It wasn't even simply a bus stop at one street and then a bus stop at the end of the street, but that he had to make several turns in order to get to another one and cross a large thoroughfare to get to that second one, which we believe would support the district court's finding that they were different locations. Also... So if he mugs two kids at the same bus stop, that's the same occasion, right? Same time? If it were... They're shoulder-to-shoulder, right? If there were two kids at the same bus stop and he... Yes, Your Honor. We would believe that. Okay. I mean, you can see where I'm going to go with this, but, right? Surely. Okay. They're 10 feet apart? They're 50 feet apart? Yes. They're a block apart? Yes. Where's the line? It's not our position that the court today has to establish a bright line because we believe that in those instances, this multi-factor analysis, how close are they in terms of determining the locations? As well as how... Were they different victims? And with regards to the specific time, but what we would turn the court to is this court's opinion in Cardenas in which there were three sales on two different days, but they were the same informant and they were only a half a block away. That was pre-Wooden, though, right? That was pre-Wooden, but we do know that this court cited Cardenas with approval in the allegorical opinion for making that same determination and considering the differences. Even though it was pre-Wooden, it still continues to be a viable source of authority for this court. I see that my time is out. If there are no further questions from the court, we rely on our briefing and our arguments today and respectfully submit our case. Thank you very much, Ms. Cosby. Thank you. Mr. Hills, we'll give you three minutes on rebuttal. On my way back to the podium, I pass by six chairs, one desk, a low boy, and I'm now here standing at the desk and march past a water container. My point is if we're going to start adding up every discrete thing, we start getting away from what the relevant consideration is that it was a rather short distance from my chair to the lectern. So in Wooden, to amplify this, they're not counting the number of walls that you break through to determine if it's a separate offense, if there are 10 burglaries that would have turned out differently if we're counting walls, I suppose, but of course, Wooden doesn't do that, much less we're not tasked with counting stop signs and stop lights or anything else. The number of people and streets and intersections, those are just not relevant considerations. That is make weight, and I think that this is important, again, not to confuse the analytically significant with the make weight aspects in order to reach a result. We need a clear test. We need to know whether or not something as discrete and as omnipresent as the ability to desist is a meaningful and necessary factor, a relevant consideration, and I think that it would strain my reading, at least, of Wooden to think that the justices passed by that in silence and thought that the court should consider it later, that because it's not listed, it should be something that's open for possibilities in future cases. It just doesn't turn on whether we think that's a relevant factor or not. It is a highly significant consideration given Appendix Pages 12 through 14, where the district court relied on, multiple times, the ability to desist. The PSR said it as well, Judge. They considered this to be a significant factor. If we have, by my count, four relevant factors that are present in Wooden, and this is a fifth one, and this is one the district court thinks really weighs heavily here because the district court says it does, then I am concerned that even if the other factors are weighed, we are now skewing the analysis with something that is irrelevant to the ultimate consideration, that it is an error to apply that as a test. We could still reverse the district court and say he gave undue weight to that one factor to the expense of the others, right? Absolutely, you can, and you should, because the underlying concern is whether the factors in the case are relevant and probative to the issue of recidivism. And considered as a whole, as opposed to putting undue weight on any one particular thing, Judge. Because at the end of the day, the question is whether this guy's actions fall within the intent of the Congress to identify recidivists. And so you have to apply the test to find the answer, but Judge Ripple, I'll point this out as well, kind of rhetorically, but how long did it take to commit the 10 burglaries in Wooden? I will guess that it is more than the five minutes that we have at issue here, and yet Wooden found that the person was not subject to the enhanced penalty under ACCA, and of course, again, that's one consideration, but it's also prominent that they didn't include this factor that the district court weighed heavily and the government relies on now, and if it is to be used going forward, it'll always advantage the government, it'll always disadvantage the defendant, unlike the other factors which could break one way or another. So it all suggests to me that this is not a factor that should be a relevant consideration, and it seems to date to the Huddleston line of cases and those other cases that all preceded Wooden. With that said, I ask the court to vacate and remand. Thank you very much, Mr. Hillis. Thank you, Ms. Cosby. The case will be taken under revisement. That will complete our oral arguments for today.